**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LABARON JOSEPH ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:24-cv-1617 |
| | ) | |
| v. | ) | |
| | ) | Judge Nora Barry Fischer |
| | ) | Magistrate Judge Patricia L. Dodge |
| OFFICER SMOLLEN, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

## I. Recommendation

It is respectfully recommended that the Motion to Dismiss of Officer Stegena, Officer Jones, Officer Sergeant Lee, and Captain Estock ("the moving Defendants") (ECF No. 39) be denied. It is further recommended that Plaintiff's claims against the moving Defendants be dismissed pursuant to the screening provisions of the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"), 28 U.S.C. § 1915(e)(2).

## II. Report

### A. Relevant Procedural History

Plaintiff Labaron Joseph Robinson, an inmate in the Allegheny County Jail ("ACJ"), brings this civil rights action pursuant to 42 U.S.C. § 1983 against the moving Defendants and Officer Smollen,[1] all of whom are employees of ACJ, in their individual capacities. In the operative Amended Complaint, Plaintiff asserts violations of his constitutional rights under the Fourth,

[1] Plaintiff alleges that Officer Smollen improperly opened the door to his cell despite the existence of an institutional lockdown, leading to his attack by another inmate. Officer Smollen has not yet been served, and this Report and Recommendation does not address Plaintiff's claims against him.

Eighth, and Fourteenth Amendments stemming from an incident that occurred at ACJ on September 11, 2023. (ECF No. 38.)

The moving Defendants' Motion to Dismiss and supporting Brief was filed on May 20, 2026. (ECF Nos. 39-40.) Plaintiff was ordered to file a response on or before June 25, 2026. (ECF No. 41.) He did not do so despite having filed multiple other motions and requests. (ECF Nos. 43, 44, 45, 49, 51.) In a filing docketed on July 31, 2026, Plaintiff asked for a clarification on how to respond. (ECF No. 55)

### B. Facts Alleged in Amended Complaint

According to the Amended Complaint, at around 8:00 a.m. on September 11, 2023, Plaintiff was locked in his cell, reading a book. (ECF No. 38 at 4.) ACJ was on an institutional lockdown at this time. (*Id.*) Another inmate, Ajuan Carter, came to Plaintiff's cell door and threatened him. (*Id.*) Plaintiff asked Carter to leave him alone. (*Id.*) As Plaintiff returned to his bed, Plaintiff's door was opened by Officer Smollen using a button. (*Id.*) Carter entered Plaintiff's cell, punched Plaintiff in the face and a fight ensued. (*Id.*) The moving Defendants then responded to the incident. (*Id.*)

After the altercation was broken up, Plaintiff was brought to the dayroom where the injuries to his face were photographed. (*Id.*) As he came into contact with each Defendant, Plaintiff explained that he acted in self-defense because his door was opened by Officer Smollen. (*Id.*) The moving Defendants "neglect[ed] the fact that [his] door was opened under an 'institutional lockdown' of the jail" and still sent Plaintiff to the RHU for protecting himself. (*Id.* at 5.)

As it relates to Defendants Stegena and Jones, the Amended Complaint only alleges that they ignored his pleas about self-defense. (*Id.* at 3.) Plaintiff alleges that Defendant Lee also ignored his pleas but denied him due process and "cruelly still approved" him being sent to the

RHU despite the fact that his cell door was opened by Officer Smollen. (*Id.*) With respect to Defendant Estock, who is described as the ranking officer, the Complaint alleged that he ignored his pleas of self-defense, and "treated him with malice" when Plaintiff asked him not to send him to the RHU for protecting himself. (*Id.* at 3-4.) Plaintiff also alleges that Defendant Estock disregarded the obvious facts of how his cell door became open and conspired with the other corrections officers to send him to the RHU. (*Id.* at 4.) Plaintiff also alleges that all Defendants sent him to the RHU despite the fact that he was only protecting himself. (*Id.* at 5.)

Plaintiff requested medical attention during his transport to the RHU and for several more days, but he did not receive it. (*Id.*) He does not ascribe this conduct to any of the Defendants. He suffered a bruised face, lower back pain, a swollen eye and right thumb pain and his neck was immobile. (*Id.*)

### C. <u>Legal Standard</u>

A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). When "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210-11.

Because Plaintiff is proceeding pro se, the allegations in the Amended Complaint must be held to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519 (1972). If a court can reasonably read a complaint "to state a claim upon which relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or unfamiliarity with pleading requirements." *Sears v. Kovac*, Civ. A. No. 3:24-295, 2026 WL 1138617, at *3 (W.D. Pa. April 6, 2026).

**D. Discussion**

1. Defendants' Motion to Dismiss

The moving Defendants moved to dismiss Plaintiff's original Complaint on March 30, 2026. (ECF No. 29.) They also filed a Brief in support of their motion. (ECF No. 30.) Their motion was denied as moot after Plaintiff filed an Amended Complaint, which is the operative pleading. (ECF No. 42.)

Defendants moved to dismiss the Amended Complaint on May 20, 2026. (ECF No. 39.) However, as reflected in both their motion and their supporting Brief (ECF No. 40), they simply re-filed verbatim the identical motion and brief filed in March, including the date of March 30, 2026. All of the arguments in the motion and brief reference the original Complaint, not the Amended Complaint.

Because the moving Defendants fail to address the Amended Complaint in any manner, their motion should be denied.

2. Screening of Amended Complaint

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"), courts are required to screen complaints at any time where, as is the case here, the

plaintiff has been granted leave to proceed in forma pauperis. 28 U.S.C. § 1915(e)(2). The PLRA provides in relevant part that:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> (A) the allegation of poverty is untrue; or
>
> (B) the action or appeal—
>
> i. is frivolous or malicious;
> ii. fails to state a claim upon which relief may be granted; or
> iii. seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

In the Amended Complaint, Plaintiff asserts that his rights under the Fourth and Eighth Amendments were violated, that he was denied due process and equal protection, and was subjected to cruel and unusual punishment, as well as "excessive force." (ECF No. 38 at 3.)

Plaintiff's allegations concerning the personal involvement of the moving Defendants are limited to their role in sending Plaintiff to the RHU.[2] These allegations do not support a claim under the Fourth Amendment, nor does Plaintiff allege that any of the moving Defendants engaged in any unlawful or excessive force when they came to his cell or when he was transported to the RHU. Nor does Plaintiff allege that he is a member of a protected class or that he was treated differently from other similarly situated inmates. Accordingly, no equal protection claim arises. *See Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (explaining equal protection claim for "class of one").

---

[2] Plaintiff's allegations that each of the moving Defendants ignored his claim of self-defense do not rise to the level of a constitutional violation or otherwise state a claim.

Plaintiff also appears to assert that he was deprived of a liberty interest without due process when he was placed in the RHU. The analysis of a procedural due process claim begins with determining whether the liberty interest asserted is protected under the Fourteenth Amendment. *Montanez v. Sec'y Dep't Corr.*, 773 F.3d 472, 482-83 (3d Cir. 2014). If the asserted interest is protected, the court must determine what process is required to protect it. If the interest is not protected, no process is necessary. *Newman v. Beard*, 617 F.3d 775, 783 (3d Cir. 2010). "To rise to the level of a liberty interest, the right alleged must confer 'freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 438 (3d Cir. 2020) (emphasis omitted) (quoting *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 559 (3d Cir. 2017)); *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Prisoners do not enjoy the same liberty interests as non-incarcerated citizens. *Sandin*, 515 U.S. at 485. "[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (quoting *Jones v. N.C. Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 125 (1977)). "The more restrictive the conditions are, the shorter the period of confinement is tolerated. Conversely, the less restrictive, the longer the period is before it becomes a hardship." *Wayne v. Clark*, Civ. A. No. 21-4209, 2022 WL 17993131, at *7 (E.D. Pa. Dec. 29, 2022). Third Circuit precedent is clear, however, that "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002).

Plaintiff has not alleged that his confinement in the RHU imposed "atypical and significant hardship" in relation to the ordinary incidents of prison life. His only claim appears to be that he

was unfairly sent to the RHU. That is not enough to implicate a Fourteenth Amendment due process claim. A prisoner does not possess a right to be assigned a particular custody level or security classification. *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005). *See also Roque v. Gavin*, Civ. A. No. 12-2060, 2013 WL 3103108, at *2 (M.D. Pa. June 18, 2013) (prisoner who alleged that prison officials denied his request for placement in protective custody or transfer to a safer prison failed to state a due process claim). As the Supreme Court has held, "[i]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002). "Discipline by prison officials in response to a wide range of misconduct falls within the expected [parameters] of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485. Thus, any claim that is based on the transfer of Plaintiff to the RHU - even if it is ultimately found to be unnecessary or inappropriate following the altercation - does not state a claim on which relief may be granted.

Accordingly, Plaintiff has not demonstrated a plausible claim that he was entitled to procedural protections required by due process before his placement in the RHU.

To the extent that Plaintiff claims that his placement in the RHU constitutes cruel and unusual punishment, the Eighth Amendment's prohibition against cruel and unusual punishment guarantees that prison officials must provide humane conditions of confinement. Although "[t]he Constitution 'does not mandate comfortable prisons,' . . . neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). Thus, prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "'take reasonable measures to guarantee the safety of the inmates[.]'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

To demonstrate that conditions of confinement violate the Eighth Amendment, a plaintiff must satisfy two requirements: "(1) the deprivation alleged must be, objectively, sufficiently serious, resulting in the denial of "the minimal civilized measure of life's necessities," and (2) the "prison official must have a sufficiently culpable state of mind." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 299(1991) (cleaned up)). Only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. *Fantone v. Herbik*, 528 Fed. Appx. 123, 127 (3d Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)). "[A] totality of the circumstances test must be applied to determine whether the conditions of confinement constitute cruel and unusual punishment." *Tillery v. Owens*, 907 F.2d 418, 427 (3d Cir. 1990).

Plaintiff has not alleged facts that would support a finding that the conditions of his confinement in the RHU were inhumane. Accordingly, this claim should be dismissed.

Finally, while Plaintiff makes a conclusory reference to "excessive force" in one sentence (ECF No. 38 at 3), the Amended Complaint asserts no facts to support a violation of Plaintiff's Eighth Amendment rights bases upon a claim of excessive force. None of the moving Defendants are alleged to have engaged in any force or physical contact with Plaintiff whatsoever. Therefore, to the extent that Plaintiff attempted to assert a claim of excessive force, that claim should be dismissed as well.

Therefore, by conducting the screening required by Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2), the Court concludes that Plaintiff has failed to state a claim upon which relief may be granted.

**E. <u>Amendment</u>**

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

Here, amendment would be futile. Plaintiff has already amended his complaint once, and as discussed above, his placement in the RHU, which is the basis for his claims, does not represent a constitutional violation.

**F. <u>Conclusion</u>**

For these reasons, it is respectfully recommended that Defendants' motion to dismiss be denied. It is further recommended that Plaintiff's claims against Defendants Officer Stegena, Officer Jones, Officer Sergeant Lee, and Captain Estock only be dismissed with prejudice.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties may, within fourteen (14) days, file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: August 4, 2026

<u>/s/ Patricia L. Dodge</u>
PATRICIA L. DODGE
UNITED STATES MAGISTRATE JUDGE